**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

Civil Action No. 5:23-cv-134

SYSCO MACHINERY CORP, a Taiwan
Corporation,

                Plaintiff,

      v.

DCS USA CORPORATION, d/b/a DOREY
CONVERTING SYSTEMS, a North Carolina
Corporation,

           Defendant.

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF
AND JURY DEMAND**

Plaintiff Sysco Machinery Corp. ("Sysco" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant DCS USA Corporation d/b/a Dorey Converting Systems, LLC ("DCS" or "Defendant"). In support thereof, Sysco states and alleges as follows:

**NATURE OF THE ACTION**

1.     This is a trade secrets misappropriation, copyright infringement, unfair competition, and tortious interference action brought by Sysco against DCS. Aided by several former Sysco employees who were employed by Sysco for decades in senior positions of trust, and the company Cymtek, which employees the former Sysco employees including Ding- Shan ("Andrew") Yang ("Yang"), Yi-Shuo Wang ("Wang"), Long-Sing Wu ("Wu"), Ze-Shih Lin ("Lin"), and Bo-Jhang Su ("Su") (collectively, the "Former Sysco Employees") stole and used Sysco's confidential information, copyrights, and trade secrets to usurp business opportunities from Sysco, and to appropriate Sysco's clientele using deceptive and unfair business practices.

1

2.     Founded in 1977, Sysco is a pioneer in manufacturing industrial cutting equipment from Taiwan. Sysco owns the finest inventions of CNC Rotary Die Cutting Machine and CDC Rotary Die Cutting with Laser Scan Head Machine (collectively, "RDCs"). RDCs can be used in various kinds of productions, including phone or electronic components, smart labels, and medical devices. Sysco has spent 40 years and tens of millions of dollars developing its machinery, and is the owner of multiple, valid U.S. copyright registrations for the packaging associated with its RDCs.

3.     Sysco's compilation of machinery, software, and confidential information ("Trade Secrets") derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. By virtue of their employment at Sysco, the Former Sysco Employees had access to these Trade Secrets and other confidential and proprietary information.

4.     Unbeknownst to Sysco and while working for Sysco, in secret, the Former Sysco Employees formed and established competing corporation Cymtek in April 2021. Since early 2021 through September 2021, the Former Sysco Employees and other employees and senior managers from various departments in Sysco's RDC department resigned and went to work for Cymtek.

5.     Upon learning of this deception, Sysco subsequently discovered electronic records showing deliberate acts by its Former Sysco Employees of copying, stealing, and misappropriating confidential files and machine layouts of Sysco's RDC's. Those employees included: (1) Wu Long-Hsin, an ex-Senior Design Director (**Exhibits 1**[1] and **2**) (2) Lin Ze-Shih, an ex-Senior Design Director (**Exhibits 3** and **4**) (3) Su Bo-Jhang, an ex-Factory Manager (**Exhibits 5** and **6**); (4) Wang

[1] The exhibits referenced herein are attached in the manner that they are ordinarily kept in Taiwan.

Yi Shuo, an ex-Administrator to the RDCs computer drives (**Exhibit 7**) (5) Andrew Yang, an ex-Senior Business Manager (**Exhibits 8-12**).

6.     In addition to the theft of Trade Secrets, Andrew Yang and Lin Ze-Shih diverted RDCs deals from Sysco to Cymtek, including deals with Sysco's existing or potential clients Enovix, Freyr, Axxiva, ATE and Kyocera. Cymtck and the Former Sysco Employees assisted in their conduct by Sysco's previous US distributor, DCS, who participated in diverting deals with Sysco's U.S. customers Enovix, Freyr, and Axxiva to Cymtek (*see*, **Exhibits 13-24**). This theft and diversion was accomplished by Cymtek sending the misappropriated RDC machine layouts to Sysco's supplier to produce components of the RDCs, and then assembling RDC counterfeits at the An-Nan Factory owned by affiliated entity Cymmetrik based in Tainan City, Taiwan (location of factory: 3 F., No. 6, Keji 3rd Rd., Annan Dist., Tainan City 70955, Taiwan).

7.     Because a portion of the wrongful conduct took place in Taiwan, Sysco sought legal remedies there to enjoin Cymtek, and was granted an injunction against Cymtek, Yang, Wang, Wu, Lin, and Su in the Intellectual Property and Commercial Court of Taiwan (the "Taiwan Court"). Specifically, the Taiwan Court found that the purloined files in dispute included Sysco's technical documents, test videos, statistical data, and customer contracts used by Sysco to develop and manufacture RDCs. The Taiwan Court also found that the information contained therein had been properly secured by Sysco, is of the type of information not known to persons generally involved in industry, has competitive and economic value, and thus constitutes Sysco's trade secrets. **Exhibit 25** (Certified Translation of Taiwan Court Order).

8.     The Taiwan Court also found that Sysco claimed that Yang, Wang, Wu, Lin, and Su reproduced Sysco's files in dispute without authorization and provided such files for the use of Cymtek. Evidence supporting this claim included: (1) Sysco's work computer discs and

screenshots; (2) the screen recording video sorting out a list of Sysco's stolen files; (3) Wu, Lin, Su, and Yang's "F Slot" external device plug-in access record of Sysco's work computers; (4) the corresponding confidential files, such as high-precision mechanical layouts and other confidential files stolen by s Wu, Lin, Su, and Yang to their personal external hard disk file; (5) Yang's transmission track showing an upload of Sysco's confidential files to Box Cloud Space from his Sysco work computer; (6) the corresponding confidential files sent to Box Cloud Space by Yang; (7) the corresponding receipt record of the Box Cloud Space showing Wang as the purchaser; and (8) the comparison of layouts of spare parts and components on RDC Series Products ordered by Sysco and Cymtek to the processing factory for manufacture. Ex. 25.

9.      The Taiwan Court further found that the files in dispute were identified based on the analyses on Sysco's work computer used by Former Sysco Employees Yang, Wang, Wu, Lin, and Su prior to their resignation from Sysco, and thus those files were from Sysco's computer system. The Taiwan Court noted that Sysco would need to show a high probability that Cymtek and the former Sysco employees were infringing Sysco's Trade Secrets contained in the above-identified files and copyrights to meet the requisite showing of a likelihood of winning a lawsuit needed for the Court to grant a preliminary injunction. Ex. 25.

10.      Following, the Taiwan Court recognized that documents in the files taken by the former Sysco employees contained business secrets of Sysco and, accordingly, a denial of the preliminary injunction would cause irreparable damage to Sysco. Considering that Cymtek is continuously using and disseminating RDC Series Products and associated business secrets, Cymtek and the former Sysco employees will cause the Trade Secrets, which Sysco intends to keep confidential and does not want disclosed to the public, to be in a state of gradual disclosure. Once Sysco's business secrets are disclosed, the state of damage to Sysco would be unpredictable

and cannot be fully compensated by monetary compensation in the future. Ex. 25. The Taiwan Court then granted the preliminary injunction, holding that Sysco provided a considerable explanation of the legal relationship, the dispute, and the reason and necessity of a preliminary injunction. Ex. 25.

11.    Upon winning injunctive relieve, Sysco immediately notified DCS of the Taiwan Court Order. **Exhibit 26** (Sysco Correspondence to DCS). Cymtek, however, continues to sell its RDCs built with Sysco's Trade Secrets and copyrights through DCS.



(**Exhibit 27**, DCS Website, available at www.converting-systems.com).



(**Exhibit 28**, LinkedIn, available at https://www.linkedin.com/company/dorey-converting-systems).

12.     Plaintiff seeks damages and injunctive relief for Defendant's federal and state trade secret misappropriation, copyright infringement, unfair business practices, and tortious interference with prospective economic advantage.

## THE PARTIES

13.     Plaintiff Sysco is, and at all relevant times was, organized and existing under the laws of Taiwan and located at No.24, Kai Fa 6th Road, Rende District, Tainan City, Taiwan.

14.     Defendant DCS is, and at all relevant times was, a corporation organized under the laws of North Carolina, with a principal place of business at 3000 Bear Cat Way, STE 118 Morrisville, NC 27560.

## JURISDICTION AND VENUE

15.     This action arises under the Trade Secret Laws of the United States 18 U.S.C. § 1831, *et seq.*, and the Copyright Act, 17 U.S.C. § 101. This Court has subject matter jurisdiction

over this case pursuant to 28 U.S.C. § 1331 on the grounds that this action raises federal questions. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.     The district courts of the United States have original jurisdiction of civil actions brought under the Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. § 1831(c).

17.     The DTSA also applies to conduct occurring outside the United States if "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2). The DTSA does not define "in furtherance," but courts interpreting the DTSA have established "a relatively low bar" for acts that are considered "in furtherance of the offense."[2]

18.     "Acts in furtherance" include marketing, advertising, attending trade shows, transferring files into the United States, and selling products in the United States.[3] Defendant has taken numerous acts in furtherance of the use and disclosure of Sysco's trade secrets in the United States, including marketing, advertising, attending trade shows, transferring files, and selling products in the United States.

19.     This Court has personal jurisdiction over Defendant. Exercise of personal jurisdiction over DCS is reasonable and proper because at all relevant times, DCS is located in Wake County, North Carolina within the Eastern District of North Carolina. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because DCS is incorporated in North Carolina

---

[2] *See Dmarcian, Inc. v. Dmarcian Europe BV*, No. 1:21-cv-00067-MR, 2021 WL 2144915, at *22 (W.D.N.C. May 26, 2021).

[3] *See id.*; *MACOM Tech. Solutions, Inc.*, No. 19-220, 2019 WL 4282906, at *5 (C.D. Cal. June 3, 2019); *Inventus Power, Inc. v. Shenzhen Ace Battery Co., Ltd.*, No. 20-cv-3375, 2010 WL 3960451, at *7 (N.D. Ill. July 13, 2020); *Motorola Solutions, Inc. v. Hytera Comms. Corp. Ltd.*, 436 F. Supp. 3d 1150, 1164-1166 (N.D. Ill. 2020); *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-CV-00483, 2019 WL 2084426, at *11 (E.D. Tex. May 13, 2019).

and committing wrongful conduct in Wake County, North Carolina within the Eastern District of North Carolina.

**FACTUAL BACKGROUND**

**I.      Sysco's Business**

20.      Founded in 1977, Sysco is a pioneer in manufacturing industrial cutting equipment from Taiwan.  Sysco owns the finest inventions of CNC Rotary Die Cutting Machine and CDC Rotary Die Cutting with Laser Scan Head Machine. RDCs can be used in various kinds of productions, including, for example, phone or electronic components, smart labels, and medical devices. Sysco has dedicated significant time, energy, and resources to the design, development and manufacture of high-precision and high-efficiency automated industrial machinery systems for more than 40 years.

21.      Sysco's RDC machine is designed and looks like the following:



(**Exhibit 29**, Sysco RDC, available at http://sysco-tw.com/products_10_RDC.php.)

22.     Sysco produces 100 different models and systems and supplies customers worldwide for virtually every type of industrial cutting equipment, offering products in the following categories: die cutting presses; rotary die cutting machines; laser cutting machines; plastic card machines; card processing systems; and RFID inlay cutting and sorting small label transponder placement and lamination systems.

23.     Sysco's research and development team accounts for 30 percent of its total workforce. The research and development team focuses on innovating the best machine components to supply solutions in various industries and significantly impacts technological developments in die cutting presses worldwide.

24.     Sysco's investment in its research and development led to the creation of Sysco's proprietary software which allows machines to see what they are doing through CCD cameras and to intelligently respond to what they see.

25.     Since 1992, Sysco sold its Flatbed Die Cutting Series machines in the United States through a U.S. Distributor, Associated Pacific Machine Corp. The Flatbed Die Cutting Series is one of Sysco's series of products, including the High Speed Servo Die Cutting Machine, the High Speed Hydraulic Die Cutting Machine, the CNC Travelling Head Hydraulic Die Cutting Machine, the Full Head Hydraulic Die Cutting Machine, the Receding Head Hydraulic Die Cutting Machine, the Abrasive Die Cutting, Knockout & Stacking System, along with others.

26.     Since 2018, Sysco sold its Rotary Die Cutting Series in the United States through DCS. A list of past selling records of RDCs by DCS is attached as **Exhibit 30**.

27.     The machines sold by Sysco are diverse. Sysco can flexibly respond to the specific needs of its customers' industries, and design and manufacture customized automatic machines for customers to produce their own end products or components. For example, Sysco's customers

are in varied industries, including telecommunications, electronics, smart labeling, medical device, solar power, aviation, construction, cosmetics, carpet, and floor tile industries, among others. Sysco designs and builds easy-to-operate, high-precision, high-efficiency automated industrial machinery for its customer to manufacture their customized end products or components.

## II.    Sysco's Registered Copyrights

28.    Sysco has invested tens of millions of dollars in research and development over the course of its 40 years in the industry. As the result of this research, development, and long history, Sysco is the owner of multiple, valid U.S. copyright registrations for the packaging associated with its products.

29.    Sysco's Rotary Die Cutting System with 10 Stations 01 was registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for the technical drawings depicted below:







30.     Sysco's Rotary Laser Cutting System with 10 Stations was also registered with the

U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for

technical drawings depicted below:

11







31.     Sysco's Rotary Die Cutting System with 10 Stations 02 was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:



32.     Sysco's RDC Transfer Shaft was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:

 

33.    Sysco's RDC Rotary Laser Cutting System with 8 Stations was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:

14





Case 5:23-cv-00134-BO-RJ    Document 1    Filed 03/17/23    Page 15 of 51

34. Sysco's RDC Electricity Box was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:



35. Sysco's RDC Bush was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:



36.     Sysco's RDC Gear was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:

17



| 齒數 | 29 |
|------|-----|
| P.D | ∅87.93 |
| 齒型 | L—TYPE |

37.     Sysco's RDC NIP Roller was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-853 for technical drawings depicted below:



38.     Sysco's Hot Stamping Machine was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-847 for technical drawings depicted below:



Case 5:23-cv-00134-BO-RJ    Document 1    Filed 03/17/23    Page 20 of 51





39.     Sysco's Fixed Block 01 was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-847 for technical drawings depicted below:



40.  Sysco's  Die Backing Plate was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-847 for technical drawings depicted below:



41.    Sysco's  Module Head was also registered with the U.S. Copyright Office on July

12, 2022, and granted Registration Number VAu 1-473-847 for technical drawings depicted

below:



42.    Sysco's Fixed Block 02 was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-847 for technical drawings depicted below:



43.     Sysco's Magnetic Roller was also registered with the U.S. Copyright Office on July 12, 2022, and granted Registration Number VAu 1-473-847 for technical drawings depicted below:



44.     Sysco's copyrighted works are collectively referred to as the "Sysco Copyrighted Works."  The United States registrations of Sysco's Copyrighted Works is attached as Group **Exhibit 31**. These Copyrighted Works also are protected in Taiwan.  Although Taiwan terminated its copyright registration requirement in 1998, under Taiwanese law, copyright protection is provided automatically upon the completion of a work.

45.     Each Copyright Office registration certificate is sufficient to establish that there is a valid copyright in each of Sysco's Copyrighted Works and that Sysco is the owner of that copyright.

46.     The Sysco Copyrighted Works are valid and subsisting.

47.     The products distributed by DCS incorporate the technical specifications displayed in Sysco's Copyrighted Works.

48.     On information and belief, DCS received electronically copies of Sysco's Copyrighted Works to use for the installation of machinery into Cymtek's products, which were offered for sale and distributed by DCS in the United States.

## III. The Formation of Cymtek through the Former Sysco Employees' Theft

49. The Former Sysco Employees used their careers at Sysco to access propriety information and Trade Secrets contained in certain files (the "Files at Issue"), to poach Sysco's clientele, and to form a new company in secret, Cymtek, that directly competes with Sysco.

50. Each of the Former Sysco Employees was in a senior position of trust at Sysco, with access to Sysco's most confidential and proprietary information.

51. Each of the Former Sysco Employees were under obligations of nondisclosure under Taiwanese law. Under Taiwan law, the obligation of nondisclosure is one of an employee's auxiliary obligations arising from employment. (*See, e.g.,* Taichung Branch, Taiwan High Court 97 Lao-Shang-Yi-Zih No. 37 Civil Judgment and Taiwan New Taipei District Court 109 Lao-Jian-Zih No. 63 Civil Judgment, attached as **Group Exhibit 32**).

52. Sysco has strict hierarchical access management of its internal documents and provided employees limited access to the computer drives and files. An employee without specific authorization has no way to access Sysco's internal documents and files. The Former Sysco Employees worked at Sysco for 20 to 30 years, and they were fully aware of Sysco's policy of hierarchical access management and their obligations of nondisclosure. The Former Sysco Employees' hierarchies of access to the computer drives and charts showing access authorities are attached as **Exhibits 33** and **34**.

53. The analyses performed on Wu's Sysco work computer shows that a large number of Sysco's confidential files were copied and transferred, through Su's user account (User: Su Bo-Jhang), to a personal F drive. Defendant knew that Su, as the Factory Chief, had high access authority with access to high-level confidential files. These analyses performed on Wu's Sysco work computer are attached as Ex. 5.

28

54.     The Files at Issue are the technical documents, test videos, statistical data, client contracts, and other confidential information used by Sysco to develop and manufacture the RDCs, specifically machine parts design layouts, explored diagrams (*i.e.*, structural drawings), machine parts test data, factory acceptance tests, on-site acceptance tests of Sysco's RDCs and other specific content recorded in technical and client purchasing documents, some of which are copyrighted by Sysco. The Files at Issue are identified based on the analyses performed on Sysco's work computers used by the Former Sysco Employees prior to their resignation.

55.     The Files at Issue contain information not known to those who are generally involved in such type of information and hold great economic value. Indeed, the secrecy of such information is the reason why Sysco's "RDC Series Products" occupy a leading position in the automatic cutting equipment market.

56.     At the time of the Former Sysco Employees tenure at the Company, Sysco had adopted security and access protocols that controlled who could review, use and access the confidential information. The technical information for each Sysco's RDCs was stored in different data slots on Sysco's network by means of hierarchical management that limited access rights for the intranet data slots containing confidential documents. Those employees who are not involved in the "RDC Series Products" project do not have authority to access the relevant files. Sysco considers those files to be trade secrets. Sysco's security measures limit Sysco employees' access to such information. Most employees do not have authority to access that data. However, the Former Sysco Employees were able to access such data given their seniority in the company.

57.     All the Former Sysco Employees had access to and regularly used the Files at Issue by virtue of their senior positions at Sysco.

58. While working and performing their job duties for Sysco and accessing the Files at Issue, the Former Sysco Employees were secretly planning to form competing company Cymtek, which was established on April 30, 2021.

59. This was accomplished by the end of July 2021, upon information and belief, with the direction and supervision of Cymmetrik. By this time, Templer Wei (who is Cymmetrik's CEO, as well as a director of Cymtek appointed by Cymmetrik), Yang, and DCS had already discussed with Sysco's customers their capabilities to manufacture RDCs. They misled customers (including Sysco customers Enovix and Fryer) into believing that Cymmetrik and Cymtek had legitimate techniques and trade secrets to manufacture and sell RDCs. (Email exchange, attached as Ex. 17).

60. The Former Sysco Employees along with 18 other employees and senior managers from various departments resigned from Sysco to join Cymtek beginning in early 2021 to the end of September 2021. All Former Sysco Employees along with the additional 18 employees subsequently joined Cymtek.

61. The Former Sysco Employees took advantage of their access to the information contained in the Files at Issue resulting from Sysco's 40 years of research and development to create their own die cutting machines in a matter of a few months to directly compete with Sysco.

62. The Former Sysco Employees purposefully misappropriated several technical secrets related to Sysco's RDCs. In addition, a large number of the Files at Issue were reproduced and stolen in mass by Wu, Lin, Yang, and Su prior to their resignation. (Files at Issue stolen by Former Sysco Employees attached as **Group Exhibit 35**).

63. Wu reproduced the stolen Files at Issue without authorization and provided such files for Cymtek's use. *See* **Group Exhibit 36** (depicting screen recording and screenshots of

Former Sysco Employees' work computers showing stolen files); (*See* Ex. 2, 3, 5, and 12, access records depicting Former Sysco Employees' external devices plugged or unplugged into work computer "F Folder" or "E Folder"); (*See* Ex. 7, transmission records of Yang using Sysco's work computer to upload files to Box Cloud Space storage); **Exhibit 37** (comparison of Sysco and Cymtek RDC parts/component design layouts).

64. In addition, a folder named "Sysco Project" in the "Box Cloud Space" was used by Wang, Wu, and Yang ("Folders at Issue") while they were employed at Sysco, which was not previously known to Sysco. The Folders at Issue stored design layouts, specification documents, test data, factory acceptance tests and other technical documents concerning the design, manufacture and performance of Sysco's RDCs.

65. Wang purchased a starter license at Box Cloud Storage for the Former Sysco Employees to upload stolen Sysco documents onto Box. The Box folder was titled "Sysco Project." (A copy of the invoice to Wang from Box is attached hereto as **Exhibit 38**).

66. The "Sysco Project" folder was not part of Sysco's technical organization system, and prior to the theft, was unknown to Sysco. The files uploaded to "Sysco Project" on Box by the Former Sysco Employees included component design layouts, structural layouts, videos of acceptance tests, purchase contracts, various other contracts, and technical documents. The proprietary information in the aforementioned files included machine parts design layouts, structural drawings, machine parts test data, factory acceptance tests, in-site acceptance tests of the RDCs, and specific content recorded in technical and client purchasing documents.

67. Several technical and contract documents of the Sysco's model "M10S27W" ordered by Sysco's RDCs, including layout, conditions of contract, negotiations of technical and commercial terms (Tech Spec_Foil Cut and Lamination, Tender Qualifications and Exceptions -

Commercial) were fully uploaded to the aforementioned "Box Cloud Space." Yang also transmitted several sales data concerning Sysco's RDCs to his personal external hard drive in August 2021.

68.     Files downloaded by the Former Sysco Employees at that time included at least component design layouts, structural layouts, video of acceptance tests, purchase contracts, various other contracts and technical documents, which were reproduced and stolen by Wu, Lin, Su, and Yang.

69.     Upon information and belief, the Former Sysco Employees stole the information uploaded to the Folders at Issue for Cymtek and DCS's use and benefit.

**IV.     The Former Sysco Employees Communicate with Sysco's Customers and Suppliers for the Benefit of Cymtek and DCS**

70.     On April 1, 2021, during their course of employment at Sysco, Wu and Lin began to use their Cymtek email addresses. Lin and Yang deliberately concealed the fact that customers had sought a quotation for Sysco's RDCs from Sysco, and transferred those same RDCs orders, component orders, and business opportunities that were originally intended for Sysco to Cymtek. (Complete list of clients attached as Ex. 30).

71.     Starting April 21, 2021, before the formation of Cymtek, the Former Sysco Employees provided design layouts of Sysco's idler pulley, tension roller, bearing shaft, with identical material, specifications, models, designs, and illustrations to Sysco's suppliers and ordered the manufacture of these various device parts and components of the RDCs. Had the Former Sysco Employees not stolen Sysco's Trade Secrets, it would have been impossible for them to design and manufacture such components in the matter of two short months.

72.     During their course of employment at Sysco, Yang and Lin concealed their communications with DCS from Sysco and transferred Sysco's orders to Cymtek for fulfillment.

73.     As a result of the Former Sysco Employees' theft, Cymtek manufactured RDCs that infringe Sysco's Trade Secrets and Sysco's Copyrighted Works in the "Annan Plant," which at the time, was owned by Cymtek's then-parent corporation Cymmetrik. Cymtek also delivered several transferred orders of Sysco's RDCs on schedule beginning in March 2022. Had the Former Sysco Employees not stolen Sysco's Trade Secrets, it would be impossible for Cymtek to design and manufacture such components in the matter of two short months.

74.     The Former Sysco Employees collaborated during their employment at Sysco to obtain all information needed and steal the necessary documents to form Cymtek using the research Sysco spent over 40 years developing.

75.     The Former Sysco Employees acted intentionally and strategically before their departure from Sysco to benefit their next business venture, Cymtek.

76.     The formation of Cymtek would not be possible in a limited period of time, around two months, without the use of Sysco's proprietary information and Trade Secrets.

77.     If the information contained in the Files at Issue continues to be misappropriated and disclosed, Cymtek can accelerate its research and development, carry out mass production, and continue to poach Sysco's clients, which will likely seriously undermine the Sysco's competitiveness in the international market.

V.      **Sysco's Relationship with DCS**

78.     Sysco started to sell RDCs in the United States and Mexico through the U.S. Distributor, DCS, in 2017. DCS was responsible for developing customers interested in RDCs in the United States, and received commission fees for each U.S. Sysco RDC business deal. For any RDC business deal, Sysco, DCS, and the customer would work together to develop a machine that met the customer's technical requirements.

79.     DCS and Sysco operated under a good faith relationship established between the two entities over the course of multiple business dealings throughout the years. (Ex. 31).

80.     Sysco became aware of DCS's relationship with Cymtek and ceased all business dealing with DCS. As of the filing of this Complaint, Sysco no longer communicates or does business with DCS.

81.     On October 14, 2021, DCS received a letter from Sysco's lawyers putting DCS on notice of Sysco's intellectual property rights relating to its proprietary RDC Series Products: Dual Rotary Cutter. The letter warned DCS that Sysco planned to bring legal action in civil and criminal court against intellectual property right infringers. (**Exhibit 39**).

82.     On April 6, 2022, DCS received an attorney's letter from Innovatus Law asking DCS to avoid transactions with Cymtek, a then newly-founded entity in the Annan District in Taiwan where a series of RDC counterfeits had been manufactured and sold. (A copy of the letter is attached hereto as Ex. 26).

**VI.     Cymtek's Relationship with DCS**

83.     Sysco started to sell RDCs in the United States and Mexico through the U.S. Distributor, DCS, in 2017. DCS was responsible for developing customers interested in RDCs in the United States, and received commission fees for each U.S. Sysco RDC business deal. For any RDC business deal, Sysco, DCS, and the customer would work together to develop a machine that met the customer's technical requirements.

84.     The Former Sysco Employees established a relationship with DCS during their employment at Sysco and continued such relationship after the creation of Cymtek.

85.     Business dealings and agreements that the Former Sysco Employees established during their employment at Sysco selling Sysco products were transferred to Cymtek.

34

86. During his employment at Sysco, Yang communicated with Enovix, a potential Sysco client. Enovix contacted Sysco through DCS to order Sysco's RDC products. Yang sent price quotations and machine layouts to DCS from Yang's Sysco email address, noting Sysco as the supplier. (Copies of email communications between DCS and Yang are attached hereto as Ex. 13).

87. During their employment at Sysco, Yang's communications with DCS regarding Enovix's order resulted in a purchase order and purchase agreement with DCS showing Enovix ordering RDC products from Sysco. Upon information and belief, DCS visited Taiwan to meet with Cymtek and Enovix and finalize the deal between the two parties that should have been between Sysco and Enovix. A copy of email communications regarding the meeting are attached hereto as Ex. 17).

88. Despite the purchase order and purchase agreement between DCS and Enovix to sell Enovix Sysco products, Enovix was ultimately sold Cymtek products. An order confirmation, found on Lin's Sysco work computer, between DCS, Enovix, and Cymtek is attached hereto as Ex. 16).

89. Similar to DCS's agreement with Enovix for the purchase of Sysco products, DCS entered into a business deal with another client, Freyr, for the sale of Sysco products. (Copies of email communications regarding Freyr's purchase of Sysco products and the order forms are attached hereto as Ex. 23).

90. Similar to DCS's agreement with Enovix for the purchase of Sysco products, DCS entered into a business deal with another client, Axxiva, for the sale of Sysco products. (Copies of email communications regarding Axxiva's purchase of Sysco products and the order forms are attached as Ex. 24).

91.     Towards the end of the business relationship between DCS and Sysco, DCS sent multiple emails to Sysco inquiring about Sysco's capabilities and business information in efforts to close the deal with FREYR. Copies of email communications are attached hereto as **Exhibit 18**.

92.     As was the case with Cymtek taking over Sysco's Enovix deal, Cymtek and DCS made similar efforts for Cymtek to take over Sysco's FREYR deal. During his employment at Sysco, Yang communicated with DCS to introduce FREYR to Cymtek.

93.     Following Yang's communications with DCS and the introduction of FREYR to Cymtek, DCS sold Cymtek's machine to FREYR. *See* **Exhibit 40** (Wang Declaration, ¶ 45.)

94.     While still employed by Sysco, Yang began using his Cymtek email in communications with Sysco clients.

95.     DCS continues to ship Cymtek's component parts into the United States, for sale to United States customers, including a sale that purportedly would garner "over $5,000,000 in revenue" for Cymtek. Ex. 40, ¶ 48.

96.     On December 8, 2022, DCS received a shipment of Cymtek's component parts at its North Carolina office. Ex. 40, ¶ 46.

97.     DCS also markets and advertises Cymtek's RDC products at trade shows in the United States, including at the 2022 Battery Show North America in Novi, Michigan in September 2022.

**VII.   Sysco's Injunction Against Cymtek in the Taiwan Court**

98.     On March 4, 2022, Sysco filed a motion in the Taiwan Court seeking an injunction to maintain the status quo and protect Sysco's Trade Secrets.

99.     On March 16, 2022, the Taiwan Court granted Sysco's motion for injunction maintaining a temporary status quo. (A certified translated copy of the Taiwan Court's opinion is attached as **Exhibit 41**).

100. The Taiwan Court granted the preliminary injunction in connection to the Files in Dispute defined as Sysco's technical documents, test videos, statistical data, and customer contracts used by Sysco to develop and manufacture CNC Rotary Die Cutting Machines and CNC Rotary Die Cutting with Laser Scan Head Machines.

101. The Taiwan Court held that the information contained in the Files is not known to persons generally involved in that type of information, and has economic value, and that Sysco had measures in place to control access to its hard drives.

102. The Taiwan Court found the following evidence supporting the claim that Former Sysco Employees, reproduced Sysco's Files without authorization and provided such files for use of Cymtek: (1) screen recordings of Sysco's work computers; (2) access records of Long-Sing Wu, Ze-Shih Lin, and Bo-Jhang Su's external devices plugged or unplugged into Sysco's work computers; (3) corresponding confidential files, such as high-precision mechanical design drawings theft by former Sysco employees Wu, Lin, and Su to their external hard drives; (4) transmission records of former Sysco employee Yang using their Sysco work computer to upload files to the Box cloud storage; (5) the corresponding confidential files stolen and uploaded by former Sysco employee Yang to the Box cloud storage; (6) the corresponding purchase receipt of the Box cloud storage fees showing former Sysco employee Wang as the purchaser; and (7) the comparison of the design drawings of the parts and components of RDC Series Products placed by Sysco and Cymtek to the suppliers.

103. The Files were identified as originating from Sysco's work computers used by the Former Sysco Employees prior to their resignation. The Files were reproduced by the Former Sysco Employees and provided to Cymtek.

37

104.    The information contained in the Files gave Sysco a competitive advantage in the industry.

## COUNT I

**Misappropriation of Trade Secrets**
**18 U.S.C. § 1836 of the Federal Defend Trade Secrets Act**

105.    The information contained in the Files gave Sysco a competitive advantage in the industry.

106.     All prior allegations contained in the Complaint are pled as if fully set forth in this paragraph.

107.    Sysco's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

108.    DCS obtained Sysco's Trade Secrets from its client Cymtek while the Former Sysco Employees were employees of Sysco and possessed a duty to protect those Trade Secrets.

109.    Upon information and belief, DCS knew that its possession and use of Sysco's Trade Secrets was unauthorized and wrongful.

110.    Through their previous positions with Sysco, the Former Sysco Employees were able to gain access to Sysco's Trade Secrets, which they would not otherwise have been able to access.

111.    Sysco's Trade Secrets, to which the Former Sysco Employees had access, were developed at significant expense and over a considerable period of time.

112.    Sysco's Trade Secrets, to which the Former Sysco Employees had access, provide a competitive advantage over those who do not know the information, and have independent

economic value because the information is not generally known to and readily ascertainable by proper means by other persons who can obtain economic value from its use.

113.    Sysco's Trade Secrets are related to products or services that are intended for use in interstate or foreign commerce.

114.    Sysco's Trade Secrets have significant value to a competing businesses like Cymtek and CymMetrik with which DCS acts as the distributor.

115.    DCS has misappropriated Sysco's Trade Secrets by acquiring, using, and/or disclosing the information as described above, including by marketing, offering, and/or selling or attempting to sell in the United States products that comprise, embody, and/or incorporate Sysco's Trade Secrets described herein.

116.    DCS has misappropriated Sysco's Trade Secrets by receiving with knowledge of the theft and using Sysco's Trade Secrets in the United States without express or implied consent after the knowledge of Sysco's Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of Sysco's trade secrets.

117.    As alleged herein, DCS committed numerous acts in furtherance of its misappropriation in the United States and in this District, including misappropriating Sysco's Trade Secrets with knowledge and intent to harm Sysco in this District, as well as marketing, attempting to sell, and/or selling products in the United States and this District that benefit from the theft of Sysco's Trade Secrets.

118.    DCS profited from its improper use of Sysco's Trade Secrets.

119.    Cymtek continues to use Sysco's Trade Secrets to perform and fulfill orders transferred from Sysco to Cymtek without authorization, including sales into the United States through DCS. If Cymtek continues to unlawfully use Sysco's Trade Secrets, Cymtek will greatly

benefit and accelerate their research and development in a short period of time. Cymtek is able to offer their infringing products at a lower-cost compared to Sysco because Cymtek has not invested resources to develop the technology for over 40 years. Instead, Cymtek stole Sysco's 40 years of hard work and dedication. Cymtek will continue to poach Sysco's clients and has a financial advantage over Sysco due to significantly lower research and development costs. Cymtek's use of Sysco's Trade Secrets poses an imminent danger to Sysco and greatly impacts Sysco's competitive advantage in the industry.

120.    Sysco's Trade Secrets constitute trade secrets within the meaning of Section 1893(3) of United State Code Title 18. Such information is valuable to Sysco, would be valuable to a competitor, and was developed at great expense to Sysco. Such information is subject to reasonable security efforts, including Sysco's hierarchical network access management system, and is not known to Sysco's competitors through legitimate means. Moreover, Sysco's Trade Secrets derive independent actual and/or potential economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

121.    All of DCS's acts of misappropriation occurred following passage of the Defend Trade Secrets Act on May 11, 2016.

122.    The Former Sysco Employees had a duty to keep Sysco's Trade Secrets secret under Sysco's hierarchical network access management system and the legal obligation of nondisclosure arising from their employment relationships with Sysco under Taiwan Law.

123.    At no time has Sysco given its consent, express or implied, to use or disclose any of Sysco's Trade Secrets outside of the terms of the Former Sysco Employees' employment with Sysco.

124.    At no time has Sysco given its consent, express or implied, to any distributors of Sysco's competitors to access, disclose or use any of Sysco's Trade Secrets.

125.    Sysco's discovery that the Former Sysco Employees have breached their nondisclosure obligations creates a reasonable apprehension of trade secret misappropriation by DCS, unless it is restrained and enjoined from doing so.

126.    Under the circumstances, Sysco is likely to suffer irreparable harm unless DCS is restrained and enjoined from any threatened misappropriation of its Trade Secrets.

127.    DCS has acted willfully and maliciously in the conduct described herein.

128.    Sysco is entitled to an order enjoining DCS's ongoing unlawful use and custody of Sysco's Trade Secrets.

129.    Sysco is entitled to actual losses resulting from DCS's misappropriation of Trade Secrets, unjust enrichment caused by the misappropriation of the Trade Secrets, and a reasonable royalty for DCS's use and/or custody of Sysco's Trade Secrets.

130.    Pursuant to 18 U.S.C. § 1836(b)(3), Sysco hereby requests injunctive relief to enjoin DCS from using its Confidential Information; an award of damages for actual loss caused by any misappropriation of Trade Secrets; attorney's fees; an award of damages for unjust enrichment caused by any misappropriation of Trade Secrets; and an award of exemplary damages.

### COUNT II
**Misappropriation of Trade Secrets, North Carolina Trade Secrets Protection Act**

131.    All prior allegations contained in the Complaint are pled as if fully set forth in this paragraph.

132.    During their employment with Sysco, the Former Sysco Employees had access to Sysco' proprietary and confidential information. This information constitutes valuable trade secrets that deserve protection under the North Carolina Trade Secrets Protection Act, N.C. Gen.

41

Stat. §§ 66-152 through 66-157 (the "Act"). This information derives economic value by not being generally known to, and not being readily ascertainable by proper means by, the public or any other person who can obtain economic value from its disclosure or use. The proprietary and confidential information is the subject of reasonable efforts on the part of Sysco to maintain its secrecy.

133.    As employees/founders of the newly created competing company Cymtek, the Former Sysco Employees have disclosed their knowledge of Sysco's proprietary and confidential information to Cymtek's distributor, DCS.

134.    As the distributor for Cymtek, DCS has disclosed and will inevitably disclose in the future and use its knowledge of Sysco's proprietary and confidential information, including the Copyrighted Works, and technical, financial, operations, strategic planning, product, pricing vendor, and customer information, all of which constitute "trade secrets" as that term is used in the Act, for its own benefit and for the benefit of its client, Cymtek.

135.    DCS have converted and misappropriated, or will convert and misappropriate, some of all of the confidential information belonging to Sysco, and Sysco has been damaged, or will be damaged, by this conversion and misappropriation.

136.    The DCS has acted, or will be acting, in disregard of Sysco's rights in converting and misappropriating Sysco's Trade Secrets.

137.    DCS's actions constitute violations of the North Carolina Trade Secrets Protection Act, N.C. Gen. Stat. §§ 66-152 through 66-157.

138.    As a result, Sysco is entitled to recover its actual damages, including the actual loss caused by DCS's conduct.

42

## COUNT III
### Federal Copyright Infringement
### 17 U.S.C. §§ 101, *et seq.*

139.     All prior allegations contained in the Complaint are pled as if fully set forth in this paragraph.

140.     Sysco is the owner of Sysco's Copyrighted Works, including the Certificates of Registration corresponding to each.

141.     Sysco's Copyrighted Works are original, creative works of authorship fixed in a tangible medium from which they can be perceived, consist of copyrightable subject matter, and are valid.

142.     Sysco is the exclusive owner of all rights, title, and interest in the Copyrighted Works.

143.     The Former Sysco Employees had access to the Copyrighted Works.

144.     Copyrighted Works to provide the technical drawings of Sysco's RDC machinery without authorization, and provided them to Cymtek.

145.     DCS conspired with Cymtek to copy and reproduce the protected and protectable technical drawings to facilitate the installation of Sysco's RDC machinery without authorization, in order to further create a less expensive alternative to Sysco's RDC machinery.

146.     On information and belief, DCS knowingly received copies of the Copyrighted Works from Cymtek, in order for DCS to install machinery into Cymtek's products that exactly match the specifications displayed in the Copyrighted Works.

147.     On information and belief, DCS was involved in the transfer and importation into the United States of infringing copies of Sysco's Copyrighted Works, without authorization from Sysco.

43

148. On information and belief, DCS knowingly received copies of Sysco's Copyrighted Work, which were acquired outside the United States, in the United States in order to install machinery into Cymtek's products that were intended to be sold in the United States.

149. On information and belief, DCS agreed and transacted with Cymtek to enter into sales that involved the installation of Sysco's RDC machinery without authorization.

150. On information and belief, the installation of machinery identical to the technical drawings protected and protectable in the Copyrighted Works could not have been accomplished apart from the unlawful copying of the Copyrighted Works.

151. On information and belief, DCS knowingly worked to provide Cymtek's products, which involve the installation of Sysco's RDC machinery that could not have been accomplished apart from the unlawful copying of the Copyrighted Works, to companies located in the United States

152. DCS knowingly sold Cymtek products incorporating installed RDC machinery in conjunction with Cymtek.

153. DCS did not seek and failed to obtain Sysco's consent or authorization to utilize, manufacture, reproduce, copy, display, prepare derivative works, distribute, or sell Sysco's Copyrighted Works.

154. On information and belief, with full knowledge of Sysco's copyrights, DCS adopted Sysco's Copyrighted Works into substantially similar machinery.

155. On information and belief, with full knowledge of Sysco's copyrights, DCS used Sysco's Copyrighted Works in advertising its machinery that was substantially similar to that sold by Sysco the public.

156. With full knowledge of Sysco's copyrights, DCS also adopted and used Cymtek's substantially similar machinery in connection with Cymtek products, which it distributed to the public.

157. On information and belief, DCS's infringing conduct alleged herein was and continues to be willful and with full knowledge of Sysco's rights in Sysco's Copyrighted Works, and in disregard of, and with indifference to, the rights of Sysco. On further information and belief, DCS's intentional, infringing conduct was undertaken to reap the aesthetic benefit and value associated with Sysco's Copyrighted Works.

158. DCS committed all of the acts alleged herein without Sysco's permission, license, or consent.

159. Upon information and belief, DCS has benefited from the infringement of Sysco's Copyrighted Works through the profits generated from the sales of the Cymtek products.

160. DCS's wrongful actions continue to deprive Sysco of its rights and benefits in its Copyrighted Works, which include the exclusive right to use, reproduce, distribute, sell, and create derivative works of the Sysco Copyrighted Works.

161. Upon information and belief, unless enjoined by the Court, Defendant will continue to wrongfully use and infringe on the Sysco Copyrighted Works by continuing to distribute and profit from the sale of machinery based on the Sysco Copyrighted Works or variants thereof.

162. As a direct and proximate result of DCS's infringing conduct alleged herein, Sysco has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Sysco is also entitled to recovery of DCS's profits attributable to DCS's infringing conduct alleged herein, including from any and all sales of products incorporating or embodying the machinery at issue, and an accounting of and a constructive trust with respect to such profits.

163.     Alternatively, Sysco is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for DCS's willful infringing conduct, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

164.     Sysco further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

165.     As a direct and proximate result of the DCS's infringing conduct alleged herein, Sysco has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless DCS's infringing conduct is enjoined by this Court, DCS will continue to infringe the Sysco's Copyrighted Works. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT IV
## Unfair and Deceptive Trade Practices

166.     All prior allegations contained in the Complaint are pled as if fully set forth in this paragraph.

167.     DCS's actions in and affecting commerce in North Carolina are unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

168.     The acts and conduct of Defendant as alleged constitute unfair competition under North Carolina common law, including without limitation: (a) obtaining, using and disclosing valuable proprietary information and records for the benefit of a direct competitor; (b) aiding and abetting Sysco's employees' breach of their fiduciary and other duties owed, and conversion of property belonging, to Sysco; (c) soliciting and employing Sysco's employees to work in direct competition with Sysco and (d) contacting, soliciting, and/or otherwise doing business with Sysco's customers.

46

169.    Defendant's acts and conduct as alleged above caused and continue to cause damage to Sysco, including to its goodwill and reputation, and resulted in losses to Sysco and illicit gain of profits to Defendant in an amount which is unknown at the present time.

170.    As a direct and proximate result of Defendant's improper action and unfair competition as set forth herein, Sysco has suffered and continues to suffer damages, including attorneys' fees.

## COUNT V
### Tortious Interference with Prospective Economic Advantage

171.    All prior allegations contained in the Complaint are pled as if fully set forth in this paragraph.

172.    Sysco has been a leader in the RDC industry for more than 40 years. As a result of its success in the industry, Sysco has enjoyed repeat business from many of its customers. Business deals are generated by Sysco, as well as through Sysco's distributors, such as DCS.

173.    The Former Sysco Employees had information about Sysco's business deals and knew about Sysco's customers by virtue of their senior positions of employment with Sysco. Some of these deals included deals with Enovix, Axxiva, FREYR, ATE, Kyocera, and, upon information and belief, the "company in California" mentioned in Wang's Declaration (see Ex. 40, ¶¶ 47-48).

174.    Cymtek, through the Former Sysco Employees and with knowledge and assistance from DCS, intercepted these deals and took those deals for their own benefit and for Cymtek and DCS's benefit.

175.    With DCS's knowledge and assistance, Cymtek was able to divert the deal between Sysco and FREYR. Specifically, DCS, on behalf of Cymtek, "placed an order for a ILRC machine that Cymtek understands DCS has, in turn, sold to FREYR." Ex. 40, ¶ 45.

47

176. With DCS's knowledge and assistance, Cymtek was able to divert the deal between Sysco and the "company in California." Specifically, DCS, on behalf of Cymtek, "arranged orders for multiple ILRC machines from a company in California" for "over $5,000,000 in revenue" for Cymtek. Ex. 40, ¶¶ 47-48.

177. With DCS's knowledge and assistance, at least these deals were diverted from Sysco to Cymtek.

178. DCS's conduct was malicious insofar as it knew that these customers wanted to do business with Sysco, and but for their interference, the customer would have entered into a deal with Sysco.

179. But for DCS's misappropriation of Sysco's Trade Secrets and intellectual property, DCS in conjunction with and on behalf of its client Cymtek would not have been able to close the deals with Sysco's customers.

180. DCS's intentional interference with the Sysco's customers and prospective economic advantage was improper and without justification, and in reckless disregard for Sysco's rights.

181. Sysco has suffered and will continue to suffer damages and irreparable harm as a direct result of DCS's conduct, including diminished value of its confidential information, harm to its goodwill and reputation, and loss of its competitive advantage.

## JURY DEMAND

Sysco respectfully requests a trial by jury on all issues so triable in accordance with Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Sysco respectfully prays that the Court enter judgment in its favor and against Defendant, and grant the following relief:

a.      Judgment in favor of Plaintiff, plus interest as allowed by law;

b.      A finding that Defendant misappropriated Sysco's Trade Secrets pursuant to 18 U.S.C. § 1836 of the Federal Defend Trade Secrets Act;

c.      A finding that Defendant infringe Sysco's Copyrighted works pursuant to the Copyright Act, 17 U.S.C. §§ 101 et seq.;

d.      A finding that Defendant committed unfair and deceptive business practices pursuant to N.C. Gen. Stat. § 75-1.1 et seq.;

e.      A finding that Defendant misappropriated Sysco's Trade Secrets pursuant to N.C. Gen. Stat. §§ 66-152, et seq.;

f.      A finding that that Defendant is liable for tortious interference with Sysco's prospective economic advantage;

g.      An award of all monetary damages and losses sustained as allowed under state and federal law as a result of Defendant's misappropriation of trade secrets, copyright infringement, unfair and deceptive trade practices, and tortious interference with prospective economic advantage

h.      Injunctive relief prohibiting Defendant, and where applicable, employees, officers, directors, agents, successors, and assigns of Defendant, and any other person or entity in active concert or participation with the Defendant, from using or disclosing any of Sysco's confidential information, copyrighted works, and Trade Secrets and compelling Defendant, its agents, and all those persons in active concert or participation with Defendant, to return to Sysco all confidential

and/or proprietary information or other property belonging to Sysco in both hard copy and electronic form;

i.     Order that discovery immediately commence and be conducted on an expedited basis;

j.     For an award of actual, general, special, consequential, and incidental damages against Defendant in an amount according to proof;

k.     That pursuant to 17 U.S.C. § 504, Defendant be ordered to pay to Plaintiff, at Plaintiff's election, either (1) statutory damages of up to $150,000 for each of Plaintiff's copyrighted works willfully infringed by Defendant, as specified in 17 U.S.C. § 504(c)(2), or (2) the actual damages suffered by Plaintiff as a result of the infringement of its copyrights in its works, and any of Defendant's profits resulting from Defendant's infringement of the Sysco's Copyrighted Works that are not taken into account in computing actual damages.

l.     That any damage award to Plaintiff be doubled pursuant to the provisions of 18 U.S. Code § 1836;

m.     That any damages awarded to Plaintiff be increased pursuant to the provisions of N.C. Gen. Stat. § 75-1, *et seq.* and N.C. Gen. Stat. § 66-152, *et seq.*;

n.     An award of punitive damages;

o.     For post-judgment interest at the applicable legal rate;

p.     For attorneys' fees, costs and expenses incurred by Sysco; and

q.     Such other and further preliminary and final relief that the Court deems just, equitable and proper;

r.     A trial by jury.

This 17th day of March 2023.        Respectfully submitted,

**MORNINGSTAR LAW GROUP**

*/s/ J. Christopher Jackson*
J. Christopher Jackson
N.C. State Bar No. 26916
cjackson@morningstarlawgroup.com
J. William Graebe
NC State Bar No. 53480
wgraebe@morningstarlawgroup.com
421 Fayetteville Street, Suite 530
Raleigh, NC 27601
Telephone: (919) 590-0365
Facsimile: (919) 882-8890

*/s/ Christopher E. Hanba*
Christopher E. Hanba
(Special Appearance Forthcoming)
Texas State Bar No. 24121391
Dickinson Wright PLLC
607 W. Third Street, Suite 2500
Austin, Texas 78701
(512) 582-6889
Fax (844) 670-6009
chanba@dickinson-wright.com

*Attorneys for Plaintiff Sysco Machinery Corp.*